**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

MARY FENTE
individually and on behalf of all
others similarly situated,

Plaintiff,

v.

JOBCASE, INC., a Delaware Corporation,
and LYFT INC., a Delaware Corporation,

Defendants.
_____________________________________/

**CLASS ACTION**

**JURY TRIAL DEMANDED**

**CLASS ACTION COMPLAINT**

Plaintiff, Mary Fente, brings this class action against Defendants, Jobcase, Inc. ("Jobcase"), and Lyft, Inc. ("Lyft") (collectively "Defendants"), and alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**NATURE OF THE ACTION**

1. This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA").

2. Jobcase owns and operates various job-related marketing websites, including www.jobcase.com, www.designerjobs.com, and www.jobhat.com, which purport to "connect the world's workforce to empower them in their vocational, professional, and volunteering pursuits." *See* https://www.jobcase.com/about_us (last visited October 30, 2017).

3. Lyft is a transportation services company that develops, markets and operates the Lyft car transportation mobile application (the "Lyft App"). Transportation services companies like Lyft

(and Uber) earn money by providing their services, including specifically the Lyft App, to independently contracted drivers who are paid by the riders they transport. Therefore, Lyft has an incentive to market its services both to potential riders – who pay drivers for getting them where they're going – and to potential drivers – who pay Lyft for its services, including specifically the right to use the Lyft App to find riders.

4. In 2016, Lyft generated $700 million in revenue from drivers.

5. To market its transportation services to more potential drivers, and ultimately acquire a larger market share than its competitors (like Uber), on information and belief, Lyft entered into a marketing agreement with Jobcase.

6. Pursuant to this agreement, Jobcase was tasked with marketing Lyft's services to potential drivers.

7. As explained in detail below, Jobcase, on Lyft's behalf, embarked upon an intrusive telemarketing campaign to market Lyft's services to and to solicit potential Lyft drivers.

8. Upon information and belief, Lyft had knowledge of, consented to, and/or ratified Jobcase's conduct. Further, Lyft authorized Jobcase to use Lyft's trade-name in the illegal telemarketing campaign, and Lyft knowingly received and retained a monetary benefit from Jobcase's unlawful conduct.

9. In sum, Defendants knowingly and willfully violated the TCPA, causing injuries to Plaintiff and members of the putative class, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

10. Through this putative class action, Plaintiff seeks injunctive relief to halt Defendants' illegal conduct. Plaintiff also seeks statutory damages on behalf of herself and members of the class, and any other available legal or equitable remedies resulting from the illegal actions of Defendants.

**JURISDICTION AND VENUE**

11. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one Class member belonging to a different state than Defendants. Plaintiff seeks up to $1,500.00 in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

12. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendants are deemed to reside in any judicial district in which they are subject to the court's personal jurisdiction, and because Defendants provide and market their services within this district thereby establishing sufficient contacts to subject them to personal jurisdiction. Further, Defendants' tortious conduct against Plaintiff occurred within this district and, on information and belief, Defendants have sent the same text message complained of by Plaintiff to other individuals within this judicial district, subjecting Defendants to jurisdiction here.

**PARTIES**

13. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Miami-Dade County, Florida.

14. Jobcase is a Delaware corporation with a principal office located at 210 Broadway Street, 7th Floor, Cambridge, MA 02139. Jobcase directs, markets, and provides its business activities throughout the State of Florida.

15. Lyft is a Delaware corporation with a principal office located at 185 Berry Street, Suite 5000, San Francisco, CA, 94107. Lyft directs, markets, and provides its business activities throughout

the State of Florida.

**THE TCPA**

16. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

17. The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

18. The TCPA exists to prevent communications like the ones described within this Complaint. *Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 744 (2012).

19. In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

20. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

21. In 2012, the FCC issued an order further restricting automated telemarketing calls, requiring "prior express written consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb.

15, 2012)(emphasis supplied).

22. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and [the plaintiff] having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

23. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

24. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

25. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii) & 47 C.F.R. § 64.1200(f)(12)).

26. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id*.

27. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

28. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

29. Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("The FCC has determined that a text message falls within the meaning of 'to make any call' in 47 U.S.C. § 227(b)(1)(A)").

30. As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

**BACKGROUND FACTS**

31. Lyft is a $7.5 billion dollar transportation services company that develops, markets and operates the Lyft App.

32. Lyft's business model is focused on generating revenue from drivers for the services drivers provide to riders. Therefore Lyft aggressively markets its services to potential drivers.

33. In order to maximize its efforts to market to potential drivers, upon information and belief, Lyft contracted with Jobcase to market its services to potential drivers like Plaintiff.

34. Under the terms of this contract, Lyft encourages and incentivizes Jobcase to market Lyft's services to drivers by providing Jobcase with a unique URL that tracks the number of potential drivers that access Lyft's website via advertisements disseminated by Jobcase, and compensating Jobcase based on this number.

35. As a result, on or about August 10, 2017 at 11:26 a.m., Jobcase, using an automated text-messaging platform, caused a text message to be transmitted, on Lyft's behalf, to Plaintiff's cellular telephone number ending in 4187 ("4187 Number"):

917-35

Text Message
Today 11:26 AM

Maria, START NOW: Drive with Lyft, up to $1500/wk.

Click to apply! https://lkmdg.com/gOHQtlP

- jobhat
text stop to end

36. The website promoted in the text message is owned and operated by Lyft

37. Defendants' text message constitutes telemarketing because it encouraged the future purchase of Lyft's services by potential drivers.

38. Plaintiff received the subject text message within this judicial district and, therefore, Defendants' violation of the TCPA occurred within this district. Upon information and belief,

Defendants caused other text messages to be sent to individuals residing within this judicial district.

39. At no point in time did Plaintiff provide Defendants with her express written consent to be contacted by text using an ATDS.

40. Plaintiff is the subscriber and sole user of the 7883 Number.

41. The impersonal and generic nature of Defendants' text messages demonstrates that Defendants utilized an ATDS in transmitting the messages. *See Jenkins v. LL Atlanta, LLC*, No. 1:14-cv-2791-WSD, 2016 U.S. Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016) ("These assertions, combined with the generic, impersonal nature of the text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.") (citing *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1354 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS where messages were advertisements written in an impersonal manner and sent from short code); *Robbins v. Coca-Cola Co.*, No. 13-CV-132-IEG NLS, 2013 U.S. Dist. LEXIS 72725, 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013) (observing that mass messaging would be impracticable without use of an ATDS)).

42. Specifically, upon information and belief, Defendants utilized a combination of hardware and software systems to send the text messages at issue in this case. The systems utilized by Defendant have the current capacity or present ability to generate or store random or sequential numbers or to dial sequentially or randomly at the time the call is made, and to dial such numbers, *en masse*, in an automated fashion without human intervention.

43. Defendants' unsolicited text message caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendants'

text message also inconvenienced Plaintiff and caused disruption to her daily life. *See Patriotic Veterans, Inc. v. Zoeller*, No. 16-2059, 2017 WL 25482, at *2 (7th Cir. Jan. 3, 2017) ("Every call uses some of the phone owner's time and mental energy, both of which are precious."). Plaintiff received the subject text message while she was at work, causing her to stop her work activities to check her phone.

44. As outlined above, upon information and belief, Jobcase was acting as an agent of, or as part of a joint venture with Lyft, for each other's mutual benefit, within the course and scope of their agreement and with each other's full knowledge and consent.

45. Plaintiff is informed and believes that each of Jobcase's acts and/or omissions complained of herein were known, consented to, and/or ratified by Lyft.

46. Further, Lyft knowingly received and retained the monetary benefit from drivers it contracted with as a result of Jobcase's unlawful calling and telemarketing practices on Lyft's behalf.

47. Upon information and belief, at all times relevant, Lyft had the ability and right to control Jobcase's conduct as it pertained to marketing Lyft's services and/or use of Lyft's trade-name.

## CLASS ALLEGATIONS

### PROPOSED CLASS

48. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated.

49. Plaintiff brings this case on behalf of a Class defined as follows:

> **All persons within the United States who, within the four years prior to the filing of this Complaint, received a text message made through the use of any automatic telephone dialing system, from Defendants or anyone on Defendants' behalf, to said person's cellular telephone number, not for emergency**

**purpose and without the recipient's prior express written consent.**

50. Defendants and their employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the several thousands, if not more.

**<u>NUMEROSITY</u>**

51. Upon information and belief, Defendants have placed automated calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

52. The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendants' call records.

**<u>COMMON QUESTIONS OF LAW AND FACT</u>**

53. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

(1) Whether Defendants made non-emergency calls to Plaintiff's and Class members' cellular telephones using an ATDS;

(2) Whether Defendants can meet their burden of showing that they obtained prior express consent to make such calls;

(3) Whether Defendants' conduct was knowing and willful;

(4) Whether Defendants are liable for damages, and the amount of such damages; and

(5) Whether Defendants should be enjoined from such conduct in the future.

54. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendants routinely transmits text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiffs and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

55. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

56. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**SUPERIORITY**

57. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendants' wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

58. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For

example, one court might enjoin Defendants from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**Violation of the TCPA, 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiff and the Class)**

59. Plaintiff re-alleges and incorporates paragraphs 1-58 as if fully set forth herein.

60. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

61. "Automatic telephone dialing system" refers to any equipment that has the "capacity to dial numbers without human intervention." *See, e.g., Hicks v. Client Servs., Inc.*, No. 07-61822, 2009 WL 2365637, at *4 (S.D. Fla. June 9, 2009) (citing FCC, In re: Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991: Request of ACA International for Clarification and Declaratory Ruling, 07–232, ¶ 12, n.23 (2007)).

62. Defendants – or third parties directed by Defendants – used equipment having the capacity to dial numbers without human intervention to make marketing telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined above.

63. These calls were made without regard to whether Defendants had first obtained express written consent to make such calls. In fact, Defendants did not have prior express written consent to call the cell phones of Plaintiff and Class Members when the subject calls were made.

64. Defendants therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make marketing telephone calls to the cell phones of Plaintiff and Class Members without their prior express written consent.

65. All Defendants are directly, jointly, or vicariously liable for each such violation of the TCPA.

66. As a result of Defendants' conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls.

**COUNT II**
**Knowing and/or Willful Violation of the TCPA, 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiff and the Class)**

67. Plaintiff re-alleges and incorporates paragraphs 1-58 as if fully set forth herein.

68. At all times relevant, Defendants' knew or should have known that their conduct as alleged herein violated the TCPA.

69. Defendants knew that they did not have prior express written consent to send these text messages.

70. Because Defendants knew or should have known that Plaintiff and Class Members had not given prior express consent to receive its autodialed calls to their cellular telephones, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

71. All Defendants are directly, jointly, or vicariously liable for each such violation of the TCPA.

72. As a result of Defendants' violations, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

**WHEREFORE**, Plaintiff, Mary Fente, on behalf of herself and the other members of the Class, prays for the following relief:

a. A declaration that Defendants' practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b. A declaration that Defendants' violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, were willful and knowing;

c. An injunction prohibiting Defendants from using an automatic telephone dialing system to call and text message telephone numbers assigned to cellular telephones without the prior express consent of the called party;

d. An award of actual, statutory damages, and/or trebled statutory damages; and

e. Such further and other relief the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff and Class Members hereby demand a trial by jury.

Date: November 7, 2017

Respectfully submitted,

**KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT**
*/s/ Scott Edelsberg*
Scott A. Edelsberg, Esq.
Florida Bar No. 100537
edelsberg@kolawyers.com
Jeff Ostrow, Esq.
Florida Bar No. 121452
ostrow@kolawyers.com
Avi R. Kaufman, Esq.
Florida Bar No. 84382
kaufman@kolawyers.com
1 W. Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100
Facsimile: 954-525-4300
*Counsel for Plaintiff and the Class*

**HIRALDO P.A.**
Manuel S. Hiraldo
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954-400-4713

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis
Florida Bar No. 101754
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 400
Miami, Florida 33132
Telephone: 305-479-2299